## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL E. NIKOLAS, | ) | CASE NO: 8:08CV87 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| CITY OF OMAHA, a Political | ) | |
| Subdivision of the State of Nebraska, | ) | |
| S. P. BENSON JR., an Individual, and | ) | |
| JOHN DOE, an Individual, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' Motion for Summary Judgment (Filing No. 27) and Plaintiff's Motion for Partial Summary Judgment (Filing No. 31). The Court has reviewed the record and applicable law and concludes that Defendants' Motion should be granted, and Plaintiff's Motion denied.

## FACTUAL BACKGROUND

Plaintiff Michael E. Nikolas is a resident of Douglas County, Nebraska. (Filing No. 1 at ¶ 1). He owns real property (approximately 6.79 acres) located at 12115 North 36th Street, Omaha, Nebraska. (Filing No. 1 at ¶ 5). His property is not within Omaha city limits, but is within Omaha's three-mile extraterritorial zoning jurisdiction. (Filing No. 1 at ¶ 5). This zoning district is known as the Development Reserve District ("DR District"). (Filing No. 28 at ¶ 8).

The Defendant, City of Omaha ("the City"), is a political subdivision of the State of Nebraska. (Filing No. 1 at ¶ 2). Defendant Scott P. Benson is a code inspector for the City's Planning Department. (Filing No. 28 at ¶ 3). His duties include enforcement of the City's building, structural, and property code requirements, and the inspection of properties

to ensure compliance with such codes. (Affidavit of Scott P. Benson, Filing No. 29, Attachment No. 1 ("Benson Aff.") at ¶ 2). Nikolas alleges that Defendant John Doe was an employee of the City who worked as a city prosecutor and investigator. (Filing No. 1 at ¶ 3).

Soon after Nikolas purchased the property at 12115 North 36th Street, Benson sent Nikolas a notice that the City considered a garage on his property to be in violation of the City's code requirements.[1] (Benson Aff. at ¶ 8). From July 27, 2000, through September 26, 2002, the City held several condemnation hearings to determine whether the garage at issue was being unlawfully used as a dwelling, and whether all the City's Code requirements for a dwelling should apply. (Benson Aff. at ¶ 9). Throughout the proceedings, Nikolas denied he was using the garage as a dwelling; he maintained that the City's code requirements for dwellings had no application to his garage. (Nikolas Affidavit, Filing No. 33, Attachment No.1 ("Nikolas Aff.") at ¶ 5). Based on Nikolas's insistence that no one was using the garage as a dwelling, the City agreed to drop the proceedings. (Benson Aff. at ¶ 9).

In 2002, Nikolas applied for permits to install a furnace, an air conditioning unit, and several other electrical fixtures in the garage – fixtures the City considered to be regularly installed in and/or required for a dwelling, not a garage. (Benson Aff. at ¶ 11). On March 1, 2004, Benson visited Nikolas's property and, from the exterior, saw that improvements had been made to the garage. (Benson Aff. at ¶ 13). Benson concluded that the

---

[1] Section 55-43(c) of the City's zoning code prohibits "[t]he use of a site for two dwelling units, each occupied by one family, each in a separate building, excluding a mobile home unit." City of Omaha Municipal Code ("Code"), § 55-43(c).

improvements indicated that the garage was being used as a residence. (Benson Aff. at

¶ 13).   The improvements and the potential use of the garage as a dwelling, however, had

not been approved by the City. (Benson Aff. at ¶ 13).  As a result, Benson placed a placard

on the garage, ordering that it be closed as an unlawful structure. (Benson Aff. at ¶ 13).

The placard read:

> This structure has been determined to be unsafe, unfit for human occupancy,
> or unlawful, and is ordered closed by the City of Omaha Planning
> Department. Its occupancy has been prohibited by the City Code Official. Any
> person who occupies this structure, and any person who defaces or removes
> this placard, may be prosecuted and punished by a fine of up to $500 and/or
> imprisonment of up to six months.

(Filing No. 1 at ¶ 6).

As a result of Benson's placement of the placard on Nikolas's garage, Nikolas lost

use of his garage.  Section 48-75 of the Code provides:

> It shall be unlawful for any person to occupy a placarded premises or to
> operate placarded equipment, and for any owner or any person responsible
> for the premises to let anyone occupy a placarded premises or operate
> placarded equipment. Such person shall be subject to the penalties set out
> in section 1-10 of this Code.

The Code provides a means by which Nikolas could have appealed the placarding of his

garage.[2]  Nikolas, however, elected not to exercise his right to appeal.  (Nikolas Aff. at ¶

10).

On March 11, 2004, County officials issued Nikolas a ticket citation for violation of

a Douglas County nuisance regulation, regarding debris dumped on his property.  (Benson

---

[2] *See* Code § 48-101 ("Any person directly affected by a decision of the code official
or a notice or order issued under this code shall have the right to appeal to the building
board of review, provided that a written application for appeal is filed within 20 days after
the day the decision, notice or order was served or posted, as the case may be.").

3

Aff. at ¶ 14).  Later, prosecutors changed the charge to one for littering in violation of City Code § 18-22(b).  (Benson Aff. at ¶ 14).  Section 18-22(b) of the Code makes it unlawful for a property owner to "[l]itter or cause to allow litter to be deposited thereon or to remain thereon, except in proper receptacles as provided in chapter 33 of this Code."

Initially, Nikolas pled no contest and was found guilty of the charge. (Filing No. 30, Attachment No. 17).  After his conviction, he moved to withdraw his no contest plea, asserting that he had met with the City and had begun to develop a plan to clean his property. (Filing No. 30, Attachments Nos. 19-20).  On December 2, 2004, the County Court denied his motion to withdraw the plea. (Filing No. 30, Attachment Nos. 21-22).  On March 24, 2005, the County Court sentenced Nikolas to probation for 24 months, 10 days jail time to begin the day of sentencing, and 60 additional days jail time unless the Court saw "'completion of a mitigation plan acceptable to the City Planning Department.'" (Nikolas Aff. at ¶ 12).  On appeal, the Nebraska Court of Appeals found that Nikolas's plea advisement was constitutionally inadequate, and that court reversed his conviction and remanded the case for further proceedings. (Filing No. 1 at ¶ 1).  On remand, the case was dismissed due to speedy trial requirements. (Filing No. 30, Attachment No. 26).

On September 27, 2005, Nikolas's application for an accessory apartment came before the City Council for a hearing and vote. (Brown Affidavit, Filing No. 30, Attachment No. 12 ("Brown Aff.") at 2).  Nikolas failed to appear at the hearing, and the Council voted 7-0 to reject his application. (Brown Aff. at 2).

On February 29, 2008, Nikolas filed his Complaint in this action, raising three claims for relief. (Filing No. 1).  His first claim is brought under 42 U.S.C. §1983 for violations of his Fourth, Fifth, and Fourteenth Amendment rights, as well as the Ex Post Facto Clause,

4

Article I, §10, against the City only.  His second claim is also a §1983 action based on alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights, against Benson and Doe, in their individual capacities.  His third and final claim is for inverse condemnation under §21, Article I, of the Nebraska Constitution, against the City only.  On December 15, 2008, Defendants filed their Motion for Summary Judgment, asking that this Court dismiss all three claims. (Filing No. 27).  The same day, Nikolas filed his Motion for Partial Summary Judgment. (Filing No. 31).

### STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(c);  *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109-1110 (8th Cir. 2006) (citing *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. Pro. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. Pro. 56(e)).  A

5

"genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

## DISCUSSION

### Plaintiff's First Claim for Relief

Nikolas's first claim is for damages and declaratory relief under 42 U.S.C. § 1983, for violations of his Fourth, Fifth, and Fourteenth Amendment rights, and the Ex Post Facto Clause of Article I, §10, of the United States Constitution. Nikolas bases this claim for relief on eight individual claims that various City ordinances violate his constitutional rights. Specifically, he contends that the City Code sections under which he was prosecuted for unlawful littering and dumping on his property – Code §§18-1 and 18(22)(b) – are unconstitutional because they are "void and ambiguous" and create an ex-post facto law. He further contends that Code §§18-7 and 48-74 are unconstitutional because they authorize unlawful searches and seizures in violation of the Fourth Amendment. Nikolas also argues that Code § 55-763(a) is unconstitutional because it is vague and ambiguous, and because it delegates to individual property owners the power to approve or deny an

6

application for an accessory property.  Finally, Nikolas suggests that the City's actions in placarding his garage and denying his application for an accessory apartment constituted a taking without just compensation in violation of the Fourth and Fifth Amendments.

### 1.   *Plaintiff's Challenges to Code §§18-1 and 18-22(b)*

Defendants argue that §§18-1[3] and 18-22(b)[4] of the City's Code are constitutional. For the reasons set forth below, this Court agrees.

### A.   Vagueness

Sections 18-1 and 18-22(b) of the City Code are not unconstitutionally vague, arbitrary, unreasonable, or discriminatory, and do not violate the Due Process Clause of the Fourteenth Amendment.

"'Vagueness challenges that do not involve the First Amendment must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'" *Woodis v. Westark Cmty. College*, 160 F.3d 435, 439 (8th Cir. 1998) (quoting *United States v. Nadi*, 996 F.2d 548, 550 (2nd Cir.1993)).  "The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S.

---

[3] Section 18-1, before January, 2008, amendments, stated: "The provisions of this chapter [Chapter 18] shall be applicable to all that property within the city and, at the discretion of the duly designated enforcing officer, all property within three miles of the city limits."

[4] Section 18-22(b) makes it unlawful to "[l]itter or cause to allow litter to be deposited thereon or to remain thereon, except in proper receptacles as provided in chapter 33 of this Code."

489, 494, n.7 (1982) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).  Thus "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 128 S.Ct. 1830, 1845 (2008).

Sections18-1 and 18-22(b) of the City Code provide clear, fair notice of what conduct is prohibited.  Section 18-22(b) states that it is unlawful to "[l]itter or cause to allow litter to be deposited thereon or to remain thereon, except in proper receptacles as provided in chapter 33 of this Code."  This is not a case where "'no standard of conduct is specified at all.'"  *Village of Hoffman Estates*, 455 U.S. at 494, n.7 (quoting *Coates*, 402 U.S. at 614).

Further, because this case does not implicate any rights under the First Amendment, the City Code "must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'"  *Woodis*, 160 F.3d at 439 (quoting *Nadi*, 996 F.2d at 550).  The specific facts at hand in this case do not support the conclusion that §§18-1 and 18-22(b) "authoriz[e] or encourag[e] seriously discriminatory enforcement" in violation of due process. *Williams*, 128 S.Ct. at 1835.   Instead, the record substantiates the City's decision to prosecute Nikolas under §18-22(b) based on its findings that Nikolas was dumping debris on his land in violation of the City Code. (Filing No. 33, Exh. 9 at 25).

As Nikolas had fair notice of what conduct was prohibited under §§18-1 and 18-22(b), and there is no evidence that either section encouraged discriminatory enforcement, the Court concludes that §§18-1 and 18-22(b) are not unconstitutionally vague, discriminatory, or arbitrary.  Consequently, §§18-1 and 18-22(b) do not violate the Due Process Clause of the Fourteenth Amendment.

8

### B.      Probable Cause

In paragraph 20 of the Complaint, Nikolas also asserts that his prosecution and incarceration for alleged violation of §18-22(b) was without probable cause and therefore violated his rights under the Fourth Amendment. (Filing No. 1 at ¶ 15).  The Court finds that claim to be without merit.

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996)("Probable cause is to be determined upon the objective facts available to the officers at the time of the arrest.").  In this matter, the objective facts available to the Defendants at the time of Nikolas's prosecution and incarceration supported a finding of probable cause.  Before the City charged Nikolas with a violation of §18-22(b), Benson inspected Nikolas's property and saw that "a large amount of concrete and other demolition debris had been dumped into, or along the bank of, the steep ravine on the property." (Benson Aff. at ¶ 13).  At that time City officials were also aware that Douglas County Health Department Inspectors Tom Breitkreutz and Les Theisen were investigating allegedly unlawful conditions on the Nikolas property. (Benson Aff. at ¶ 13).

These objective facts provided the City with probable cause, and this Court cannot conclude that the City's prosecution and incarceration of Nikolas violated his Fourth Amendment rights.

### C.      Ex Post Facto Clause

Nikolas also asserts that §§18-1 and 18-22(b) are unconstitutional ex post facto laws, because the City did not find that §18-22(b) was applicable to his property until after

9

the alleged littering occurred.  This Court has reviewed the City Code and the applicable law, and finds that §§18-1 and 18-22(b) do not constitute unconstitutional ex post facto laws, as applied to Nikolas.

Article I, §10, cl. 1 of the Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law."  In interpreting the significance of the Ex Post Facto Clause, the Supreme Court has "held that the Clause is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504 (1995)(internal quotations omitted).  "A law violates the ex post facto prohibition if it applies to events occurring before its enactment and causes an offender affected by it to suffer a disadvantage, either by altering the definition of particular criminal conduct or by increasing the punishment for the crime." *Burr v. Snider* 234 F.3d 1052, 1054 (8th Cir. 2000)(quoting *Collins v. Youngblood*, 497 U.S. 37, 41 (1990)); *Peeler v. Heckler*, 781 F.2d 649, 651 (8th Cir. 1986)("An ex post facto law is one which reaches back in time to punish acts which occurred before enactment of the law.").

Sections 18-1 and 18-22(b) do not violate the Ex Post Facto Clause because they do not retroactively alter the definition of a crime or increase the punishment of a criminal act.  The act that the laws punished, Nikolas's littering, occurred *after* the City's enactment of the Code.  Consequently, his claim is without merit.

10

### 2.   *Plaintiff's Challenges to Code §§18-7 and 48-74*

In his Complaint, Nikolas argues that §§ 18-7[5] and 48-74[6] of the City's Code violate the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the extent that they authorize warrantless searches and seizures of residential property.  In his Brief in Opposition to Defendants' Motion for Summary Judgment (Filing No. 41), however, he asserts that §48-74 "is unconstitutional as applied to him in the circumstances of this case on Fourth and Fourteenth Amendment grounds and Fifth and Fourteenth Amendment procedural due process grounds.  No facial constitutional claim is asserted concerning the constitutionality of  § 48-74." (Filing No. 41 at 30).  Thus, Nikolas has stated that he is not asserting a facial constitutional challenge, but rather he is now asserting that the City's search and seizure of his property and person, undertaken pursuant to §§18-7 and 48-74, were unconstitutional as applied to him.[7]

---

[5] Code §18-7 states:
For the purpose of administering and enforcing the provisions of this chapter, the planning director, chief of police, parks, recreation and public property director, and/or other officer duly designated by the mayor and any other officer or employee of the city under his supervision and/or health officer of the county health department shall have the right to enter any premises in the city or its extraterritorial jurisdiction at any reasonable time.

[6] Code §48-74 states:
Upon failure of the owner or person responsible to comply with the notice provisions within the time given, the code official shall post on the premises or on defective equipment a placard reading "Danger-Closed" or similar language, and a statement of the penalties provided for occupying the premises, operating the equipment, removing the placard, or failing to close the premises or keep the premises closed.

[7] It is unclear at best whether Nikolas maintains his initial facial constitutional challenge to §18-7, and consequently, the Court will address this challenge to §18-7 in the discussion below.

11

### A.    Fourth Amendment

Benson's entries onto and placarding of Nikolas's property did not violate Nikolas's Fourth Amendment right to privacy because the garage and the area that Benson entered did not constitute "curtilage" for Fourth Amendment purposes.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  In interpreting the Fourth Amendment, the Supreme Court has extended the protections of the Fourth Amendment to include the area surrounding an individual's home, known as the "curtilage." *See United States v. Dunn*, 480 U.S. 294 (1987)("[W]e [have] recognized that the Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself.").  Thus, "[t]he protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 212-13 (1986).

Nikolas insisted repeatedly that he did not use the garage as a dwelling or residence. *See, e.g.,* Filing No. 41 at ¶¶ 12 & 15; Benson Aff. at ¶10.  Nikolas made it clear that he did not treat his garage as "the home itself," but rather consistently maintained that his garage was nothing more than a garage.  Consequently, the record demonstrates that the garage was not associated with those activities "intimately linked to the home."  As such, the garage was not "curtilage" for Fourth Amendment purposes.

Even if Nikolas could argue that his garage and the area surrounding the garage were within the "curtilage" of his residence, Benson's warrantless entry onto the property

did not violate Nikolas's right to privacy because Benson had a "legitimate law enforcement objective." *United States v. Weston*, 443 F.3d 661, 667 (8th Cir. 2006)("Where a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited."). In this case, the intrusion upon Nikolas's privacy was limited.  Each time Benson entered Nikolas's property, he entered through the driveway, and knocked on the door of Nikolas's house. (Filing No. 28 at 7).  He then proceeded to walk around the exterior of the property, but never entered or attempted to enter Nikolas's home. (*See* Filing No. 28 at 7).  Benson had a "legitimate law enforcement objective."  Nikolas had filed an application with the City to make the garage an "accessory apartment," and as one of the City's inspector's, it was Benson's job to inspect the property. (Filing No. 28 at 8).  Benson's entry onto Nikolas's property was therefore made pursuant to a legitimate law enforcement objective.

### B.      Facial Challenge to §18-7

In his Complaint, Nikolas contends that §18-7 is facially unconstitutional because it authorizes warrantless searches without regard for the constitutional proscriptions of the Fourth Amendment.  He contends that because §18-7 authorizes a City official's entry onto property within the City's jurisdiction, without any mention of the Fourth Amendment's restrictions, the Code must be unconstitutional on its face.

"It is well established that 'courts do not interpret statutes in isolation, but in the context of the corpus juris of which they are a part.'" *Pucket v. Hot Springs School Dist. No. 23-2*, 526 F.3d 1151, 1158 (8th Cir. 2008)(quoting *Branch v. Smith*, 538 U.S. 254, 281 (2003)).  When considered in the context of the Code as a whole, it is clear that §18-7 does not grant City officials the authority to enter private property in violation of the Fourth

13

Amendment.  While §18-7 makes no mention of any Fourth Amendment proscriptions, another section of the same Code, §48-34, provides further guidance as to when a City official is permitted to enter an individual's property.  Notably, §48-34 states:

> The code official is authorized to enter the structure or premises at reasonable times to inspect *subject to constitutional restrictions on unreasonable searches and seizures.* If entry is refused or not obtained, the code official is authorized to pursue recourse as provided by law.

(emphasis added).  It cannot be said that §18-7 authorizes City officials to conduct warrantless searches in violation of the Fourth Amendment.  Nikolas's constitutional challenges in this regard are dismissed.

### 3.    *Plaintiff's Challenges to Code §55-763(a)(4)*

### A.    Vagueness

In his first claim for relief, Nikolas alleges that the accessory apartment application procedure in §55-763 is unconstitutionally vague because it does not specify which property owners are required to join in the application, thereby giving City officials "unfettered discretion" to grant or deny applications.  Section 55-763(a)(2) of the City Code states that "[a]n application to allow accessory apartments may be initiated by petition of not less than 50 percent of the property owners within the proposed area."  Nikolas contends that §55-763(a)(4) fails to provide him with notice of which property owners' consents are necessary for him to complete his application.

Section 55-763 of the City Code is not unconstitutionally vague because it "provide[s] a person of ordinary intelligence fair notice of what is prohibited . . . ." *Williams*, 128 S.Ct. at 1845.  That is, a person of ordinary intelligence would understand that §55-763 requires the individual to obtain approval, by petition, of at least fifty percent of the property

14

owners within the proposed area.  It is clear that the proposed area is the area in which the applicant is proposing to build his or her accessory apartment, and §55-763(a)(3) states that "[t]he minimum designated area shall be one block face."

While §55-763 does not list each property owner by name that Nikolas must include in his application, the Constitution does not require the City to abide by such a strict standard of precision. *United States v. Whiting*, 165 F.3d 631, 634 (8th Cir. 1999)( "A lack of precision alone does not violate due process, but the Constitution requires that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.")(internal quotations omitted).  When measured by common understanding and practices, it is clear that the language of §55-763 conveys sufficiently definite warning as to what an individual must do to file an application for an accessory apartment.

Nikolas's constitutional challenges to §55-763 for vagueness are without merit, and do not survive the Defendants' Motion for Summary Judgment.

### B.    Delegation

Nikolas also alleges that §55-763 "delegates to other property owners the power to approve an application for an accessory apartment, thereby violating the due process clause of the Fourteenth Amendment." (Filing No. 1 at ¶ 18(vii)).

"The Supreme Court has long held that a municipality may prohibit a disfavored use of property but permit private citizens to waive that prohibition and consent to the use." *Silverman v. Barry*, 845 F.2d 1072, 1086 (D.C. Cir. 1988)(citing *Thomas Cusack Co. v. Chicago*, 242 U.S. 526 (1917)).  "In order for a legislative delegation to private citizens to survive a due process challenge, the Court instructs that two criteria must be satisfied.

15

First, the underlying exercise of authority must be a reasonable regulation within the power of the government.  Second, the legislature's restriction must be in the form of a general prohibition, and the delegation must be in the form of permitting private citizens to waive the protection of that prohibition." *Id.* (internal citations omitted).  Nikolas does not suggest that §55-763 is not a "reasonable regulation within the power of the government."  Instead, he argues that §55-763 does not merely permit private citizens to waive a prohibition, but empowers private citizens to create a new zoning ordinance.

In the DR District where Nikolas's property sits, the City Code permits single-family dwellings only. *See* Code §§55-105 & 55-43(c).  That is, the Code prohibits the creation of two detached residences on lots located in the DR District.  An individual living within the DR District, however, can submit an application asking the City Council to approve his or her plan to create an accessory apartment on his or her property.  Section 55-763 provides the individual with the information regarding what he or she must do to complete such an application.  Specifically § 55-763(a)(2) states that "[a]n application to allow accessory apartments may be initiated by petition of not less than 50 percent of the property owners within the proposed area."  Thus before an individual may request that the City Council waive the general prohibition against two detached residences in the DR District, that individual must obtain the approval of at least fifty percent of the property owners within his or her proposed area.

Section 55-763(a)(2) does not grant the property owners within the proposed area any legislative power to create new zoning ordinances that govern the DR District.  Instead, §55-763 "is used for no other purpose than to waive or modify a restriction which the

16

governing body has lawfully created." *Coffey v. County of Otoe*, 274 Neb. 796, 805 (Neb. 2008).

Consequently, §55-763 "is regarded as being within constitutional limitations." *Id.* Nikolas's claim that §55-763 unlawfully delegates legislative power to private citizens is dismissed.

### C.      Unconstitutional Taking

Nikolas also alleges that the City's placarding of his garage and failure to approve his accessory apartment application amounted a taking without just compensation under the Fourteenth Amendment.

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005).  "Regulatory actions generally will be deemed per se takings for Fifth Amendment purposes (1) where government requires an owner to suffer a permanent physical invasion of her property or (2) where regulations completely deprive an owner of all economically beneficial us[e] of her property." *Id.* (internal citations and quotations omitted).  In the present case, the City has not permanently invaded Nikolas's property, nor has the City completely deprived Nikolas of all economically beneficial use of his property. Instead, the City has merely placarded his property since the City found the garage to be in violation of the City's zoning ordinances. (*See* §§55-763 & 55-105).  Section 48-102

grants Nikolas the right to appeal the City's placarding of his garage.[8]  Nikolas elected not to appeal the placarding of his garage.

A constitutional challenge under the Fifth Amendment's Taking Clause is not a proper substitute for an appeal of the City's application of its zoning ordinance.  Instead, the Supreme Court has concluded that the application of the Takings Clause "in instances in which a state tribunal reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land . . ." is inappropriate as the Supreme Court "has upheld land-use regulations that destroyed or adversely affected recognized real property interests." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 125 (1978)(citing *Nectow v. Cambridge*, 277 U.S. 183, 188 (1928); *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926); *Gorieb v. Fox*, 274 U.S. 603, 608 (1927); *Welch v. Swasey*, 214 U.S. 91(1909).  In the present case, the City Council has concluded that the general welfare will be promoted by limiting the use of residential properties to single-family dwellings, except in those instances in which an individual complies with the procedures found in §55-763.  While this does limit Nikolas's ability to convert his garage into an accessory apartment, this Court cannot conclude that the City's application of its zoning ordinances to his property exceeds the City's constitutional powers.

Nikolas's claim that the City "took" his property without just compensation is without merit, and the claim will be dismissed.

---

[8] Section 48-102 states:
An appeal of a notice or order (other than an imminent danger notice or order) shall stay the administrative enforcement of the notice and order until the appeal is heard by the board, but shall not stay the criminal prosecution of any violation of any section of this code.

**Plaintiff's Second Claim for Relief**

In his second claim for relief, Nikolas asserts a 42 U.S.C. § 1983 action against Benson and Doe, in their individual capacities, for violating his rights under the Fourth, Fifth, and Fourteenth Amendments. (Filing No. 1 ¶¶ 23-27). In their Motion for Summary Judgment, the Defendants argue that Benson and Doe are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982)). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* In *Saucier*, the Supreme Court directed district courts to follow a two-step protocol for evaluating the application of qualified immunity in constitutional cases. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the Court directed the district court to inquire whether a constitutional right has been violated; if the answer is yes, then the district court should inquire whether "the right was clearly established." *Id.*

In *Pearson*, the Supreme Court declared that the *Saucier* two-step protocol is no longer mandatory, and district courts may skip straight to the second step – reasoning that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 129 S.Ct. at 818. *Pearson* further reasoned that in constitutional cases where the defendant has raised the defense of qualified immunity, "a

19

discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all." *Id.* at 811.

In this case, the relevant facts do not make out a constitutional violation.   In his second claim for relief, Nikolas alleges that Benson's and Doe's actions taken pursuant to §18-7 violated his rights under the Fourth and Fourteenth Amendments.  This Court, however, in dismissing Nikolas's first claim for relief, has already evaluated the facts and determined that Benson's and Doe's actions taken pursuant to §18-7 did not violate Nikolas's Fourth and Fourteenth Amendment rights.  Nikolas further alleges that Benson's placarding of Nikolas's garage violated his rights under the Fourth, Fifth, and Fourteenth Amendments.  Similarly, this Court has already determined that the facts of this case show that Benson's placarding of the garage did not violate Nikolas's constitutional rights.

Finally, in his second claim for relief, Nikolas contends that Benson, while acting under color of state law, maliciously and falsely accused Nikolas of using stolen property at the July 6, 2005, Planning Board meeting.  Damages for defamation, however, are not recoverable under § 1983.  *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975)("Damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States.").  As a result, Nikolas's claim for defamation also fails.

Because the facts do not establish a violation of any constitutional rights, Nikolas's claims against Benson and Doe in their individual capacities will be dismissed.

20

**<u>Plaintiff's Third Claim for Relief</u>**

In his third claim for relief, Nikolas asserts a state-law claim for inverse condemnation pursuant to §21, Art. I of the Nebraska Constitution.  In his Complaint, Nikolas states this Court has jurisdiction to hear his state-law claim pursuant to 28 U.S.C. §1367 (supplemental jurisdiction).

Exercising jurisdiction over pendent state-law claims is left to the discretion of the Court. *See* 28 U.S.C. §1367.  Because all Nikolas's federal subject matter claims have been dismissed, the Court declines to exercise jurisdiction over his one remaining state-law claim. *See* 28 U.S.C. 1367(c)(3)(stating that a district court may decline to exercise jurisdiction over a pendent state-law claim where "the district court has dismissed all claims over which it has original jurisdiction.").

Accordingly, Nikolas's third claim for relief is dismissed, without prejudice.

## CONCLUSION

For the aforementioned reasons, the Court grants the Defendants' Motion for Summary Judgment and dismisses the Plaintiff's claims.

ACCORDINGLY,

IT IS ORDERED:

1.  Defendants' Motion for Summary Judgment (Filing No. 27) is granted;

2.  Plaintiff's Motion for Partial Summary Judgment (Filing No. 31) is denied;

3.  Plaintiff's First and Second Claims for Relief are dismissed, with prejudice;

4.  Plaintiff's Third Claim for Relief is dismissed, without prejudice; and

5.      A separate Judgment will be filed with this Memorandum and Order.

DATED this 2nd day of March, 2009.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge